**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | | |
|---|---|---|
| **DANNY RAY HUFF,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 4:12-cv-00853-KOB** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

**I. Introduction**

On May 13, 2008, the claimant, Danny Ray Huff, Jr., applied for supplemental security income under Title XVI of the Social Security Act. (R. 111). The claimant alleged disability beginning November 1, 2006 because of severe injuries to his back, leg numbness, and asthma. (R. 110, 118). The Commissioner denied his claim on June 10, 2008. (R. 84). The claimant filed a timely request for a hearing before an Administrative Law Judge, and the ALJ held a video hearing on December 1, 2009. (R. 105). The claimant appeared in Gadsden, Alabama, and the ALJ presided from Birmingham, Alabama. (R. 52). The ALJ issued a decision finding the claimant not disabled on March 8, 2010. (R. 38). The Appeals Council denied the claimant's request for review on December 9, 2011. (R. 8). After the initial denial, the Appeals Council decided to consider additional information and set aside its earlier action. However, on January 19, 2012, the Appeals Council again denied the claimant's request for review. (R. 1). Consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 1). The claimant has exhausted his administrative remedies, and this

court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court reverses and remands the decision of the Commissioner.

## II. Issue Presented

The following issue is before the court: whether the ALJ committed reversible error by relying solely on the vocational consultant's residual functional capacity ("RFC") assessment form and vocational rationale form as independent evidence of other work the claimant could perform.

## III. Standard of Review

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if he applied the correct legal standards and if substantial evidence supports his factual conclusions. *See* 42 U.S.C. § 405(g) (2006); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that substantial evidence supports. "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker*, 826 F.2d at 999. A reviewing court may not look only to those parts of the record that support the decision of the ALJ, but instead must view the

2

record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. Legal Standard

A person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2006). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, subpt. P, app. 1?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920 (2011).

After determining that the claimant cannot perform his past relevant work, the ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002); *see also Allen v. Sullivan* 880 F.2d 1200, 1201 (11th Cir. 1989).

The ALJ may determine whether the claimant has the ability to adjust to other work in the national economy by applying the Medical-Vocational Grids or by use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). When a claimant cannot perform a

*full range* of work at a given level of exertion or has nonexertional impairments that significantly limit basic work skills, an ALJ's exclusive reliance on the Medical-Vocational Grids to support a finding of nondisability is inappropriate. *Id.* at 1242; *see also Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002); *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999); *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). A *full range* of work means that the claimant is able to do *unlimited* types of work at the given exertional level. *Phillips,* 357 F.3d at 1241 (emphasis added).

If nonexertional impairments exist, the ALJ may use Grids as a framework to evaluate vocational factors, but *must* also introduce independent evidence, preferably through a vocational expert's testimony, of existence of jobs in the national economy that the claimant can perform. *Wolfe v. Chater*, 86 F.3d 1072, 1077-78 (11th Cir. 1996) (emphasis added). Also, for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question that comprises all of the claimant's impairments. *Vega v. Comm. of Social Security*, 265 F.3d 1214, 1220 (11th Cir. 2001); *see also Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). Moreover, when the vocational expert's testimony conflicts with the Dictionary of Occupational Titles, the vocational expert's testimony "trumps" the Dictionary. *Id*. at 1229-30.

### V. Facts

The claimant was twenty-seven years old at the time of the administrative hearing. He has a tenth grade level of education and no GED. (R. 59). In the past, he has worked as a roofer and a construction worker. (R. 75). The claimant filed for supplemental security income alleging he could not work as of November 1, 2006 because of "back problems– rods, pins and screws" in his back, leg numbness, and asthma. (R. 118).

*Physical Limitations*

On January 30, 2006, medical personnel airlifted the claimant from Gadsden Regional Medical Center to UAB Hospital after he fell approximately twenty feet from a roof. According to Dr. Sherry Melton's discharge summary, the claimant's admission diagnoses included a L3 burst fracture, a left radial styloid fracture, and a questionable C7 transverse process fracture. (R. 60, 365). On February 1, 2006, Dr. Steven Theiss, an orthopedic spine surgeon, performed an L1-L4 fusion that included posterior instrumentation as well as reduction and compression for the L3 burst fracture. Dr. Jorge Alonso, an orthopedic trauma surgeon, treated the claimant's wrist injury nonoperatively. (R. 365, 386). As an inpatient, the claimant received physical therapy and a rolling walker. On February 8, 2006, Dr. Theiss determined the claimant to be in good condition and discharged him. (R. 366).

On February 23, 2006, the claimant visited the Gadsden Regional Medical Center Emergency Room for removal of his staples from the surgery. Dr. Murray Riggins, an emergency room physician, discharged the claimant in stable condition and instructed him to follow up with Dr. Theiss as soon as possible. (R. 313).

On February 28, 2006, during a follow-up visit, Dr. Theiss noted that the claimant's radiographs showed no change in the instrumentation or fusion. Dr. Theiss also noted the claimant's wrist fracture was healing and placed his wrist in a cock-up splint. Regarding the L3 burst fracture, Dr. Theiss stated that the claimant could increase his activity; could not participate in heavy work; could not lift greater than ten pounds; and must avoid repeated bending and twisting. (R. 386).

5

On March 19, 2006, the claimant visited the Riverview Regional Medical Center with shortness of breath symptoms. The attending physician, Dr. John Fleming, attributed the symptoms to asthma and unspecified respiratory abnormalities. Dr. Stella Powell, a radiologist, reviewed the claimant's chest x-ray and found no acute abnormalities. (R. 253, 254).

On March 21, 2006, the claimant returned to Dr. Theiss for another follow-up visit. The claimant complained of mechanical low back pain and no wrist pain. The claimant's physical exam showed his strength to be 5/5 in his bilateral lower extremities. The claimant's radiographs showed no change in his instrumentation and fusion with progressive incorporation of his bone graft. The claimant's wrist films showed a healed distal radial fracture. Dr. Theiss stated that he explained in great detail the need for the claimant to increase his rehabilitation efforts and instructed him to begin weaning off of his pain medication. (R. 385).

On October 9, 2006, the claimant visited the Riverview Regional Medical Center Emergency Room with a chief complaint of low back pain and rated his pain to be an eight out of ten. (R. 234). Dr. Michael Baker examined the claimant and ordered a lumbar spine x-ray. Dr. Baker observed the internal fixators of the claimant's lumbar spine to be intact and noticed his L-3 fracture as well. (R. 235). Dr. Baker released the claimant in stable condition the same day with instructions to obtain follow-up care in two days. (R. 228). Dr. Baker also told the claimant that he would likely need to see Dr. Theiss at UAB again for his back problem. The claimant agreed to return to the Emergency Department if his symptoms failed to improve. (R. 235).

On November 27, 2007, the claimant again visited the Riverview Regional Medical Center Emergency Room complaining of low back pain and rated his pain as a five out of ten. (R. 203). The attending emergency room physician, Dr. Malvinder Ajit, ordered a lumbar spine x-ray

that was compared with the claimant's lumbar spine x-ray from his previous visit on October 9, 2006.  Dr. Ross Barnett, a radiologist, reviewed the x-ray and observed that the claimant had an L1-L4 fusion for his prior L3 burst fracture. Dr. Barnett noted that despite minimal anterolisthesis of L1 on L3, he observed no significant changes since October 9, 2006. (R. 206). Dr. Ajit released the claimant the same day in stable condition and instructed him on the need for follow-up care. (R. 204).

On May 11, 2008, the claimant again visited Riverview Regional Medical Center Emergency Room with shortness of breath symptoms. (R. 194). Dr. Franklin Hood, the emergency room physician, ordered a chest x-ray. Dr. Norman Rahn, a radiologist, reviewed the claimant's chest x-ray and found the results to be normal. (R. 197). Dr. Hood gave the claimant prescriptions for an albuterol inhaler, prednisone, and lodrane without refills and released the claimant the same day with instructions to obtain follow up care in two days. (R. 196).

On May 27, 2008, the claimant visited Gadsden Regional Medical Center complaining of shortness of breath. (R. 294). Dr. Alex Hunt, the emergency room physician, ordered a chest x-ray for the claimant. Dr. H. A. Spencer, a radiologist, reviewed the x-ray and compared it with the prior study from January 30, 2006.  Dr. Spencer found no evidence of acute or chronic disease. (R. 292). Dr. Hunt released the claimant the same day with prescriptions for an albuterol inhaler and methylprednisolone and instructed the claimant to obtain follow up care in three days. The claimant agreed to return to the Emergency Department immediately if his symptoms worsened. (R. 296).

On June 10, 2008, the State agency disability examiner and vocational consultant, Mr. Robert Barnett, completed a physical RFC assessment form that included the following

exertional limitations for the claimant: occasionally lift or carry a maximum of twenty pounds; frequently lift or carry a maximum of ten pounds; stand or walk for about six hours in an eight hour workday; sit for about six hours in an eight hour workday; push or pull in unlimited amounts (other than lift or carry limitations); and never climb ladders, ropes, or scaffolds. (R. 240-41). The assessment also included the following nonexertional limitations: avoid all exposure to hazards, such as machinery and heights; and avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (R. 243). Mr. Barnett also referenced the records from the claimant's past visits to emergency rooms for back pain and asthma in October 2006, November 2007, and May 2008 in the additional comments section. (R. 246).

Also on June 10, 2008, Mr. Barnett completed a vocational rationale form that included checked boxes pertaining to the claimant's age and education, and that stated that the claimant could not perform past relevant work because of the limitations outlined in the prior RFC assessment. In the section of the form that pertains to other work the claimant is capable of performing, Mr. Barnett checked the box associated with the "light work range" and not the "limited light work range" for the claimant's maximum work capacity. Thus, Mr. Barnett determined that the claimant could perform the following jobs in the light work range: belt picker, turner; and textile checker. Mr Barnett also checked the box for Vocational-Medical Grid number 202.18 as the rule that provided the framework for a decision of not disabled. (R. 149-51).

On October 23, 2008, the claimant visited Gadsden Regional Medical Center with low back pain stating that he "couldn't hardly get out of bed." (R. 287). The claimant rated his lower back pain to be a five out of ten. (R. 284). Dr. Michael Disney, the attending emergency room

physician, ordered a lumbar spine x-ray for the claimant. (R. 289). Dr. H. A. Spencer, a radiologist, observed the prior L-3 fracture with associated residual deformity. He also observed the prior fusion but did not discover any evidence of new bony injury. (R. 282). Dr. Disney released the claimant on the same day in stable condition. (R. 288).

*The ALJ Hearing*

After the Commissioner denied the claimant's request for supplemental security income, the claimant requested and received a hearing with an ALJ via video conferencing on December 1, 2009. (R. 89, 92). The claimant appeared in Gadsden, Alabama, and the ALJ presided from Birmingham, Alabama. (R. 52).

The claimant testified that he injured his back in January of 2006 working as an independent roofer when he slipped from the roof because of rainfall. (R. 59). He testified that medical personnel airlifted him from Gadsden Regional Medical Center to UAB Hospital where he received emergency surgery on his spine. (R. 60).  The claimant also testified that he has yet to recover from the surgery and has attempted to follow-up with his spine surgeon. He testified that his surgeon would not treat him because he did not have any form of medical insurance. (R. 61).

The claimant testified he had attempted to go back to work as a roofer because that was essentially the only work he knew how to do, but could not handle the pain and had to quit. (R. 63, 74). When asked how his impairments have kept him from doing the kind of work he had traditionally performed, the claimant indicated that his pain seemed to become worse with each day that passed and that he could not even lift his daughter who weighed eighteen pounds. (R. 66). The claimant testified he could pick up a gallon of milk; he could only stand for five

9

minutes;  and he could only walk about half a block before needing to rest. The claimant stated

that he needed pillows or padding to sit for long periods and could not watch a movie from

beginning to end without repositioning. (R. 67-68). The claimant also testified that he did not

believe he could tolerate an eight-hour workday even if the job allowed him to change positions.

(R. 68).

The claimant stated that the pain in his lower back was at a constant intensity of five out

of ten, and that with physical activity the pain increased to a seven or eight. (R. 69, 74). He

testified that if he remained still for five minutes, his legs would become numb and that muscle

spasms in the night could bring him to tears. He further stated that the pain was not limited to his

lower back and that it radiated down both of his legs. He also indicated that he had a tingling or

burning sensation in his feet and toes. (R. 69).

The claimant testified that he did not have insurance for medications and only takes

Tylenol to relieve the pain. (R. 71). The claimant indicated that while he is not able to do any of

the cooking, cleaning, or shopping, he is able to take care of his own grooming and personal

hygiene without assistance. (R. 72). The claimant stated he averages six hours of uncontinuous

sleep a night. He testified that he spends the daytime back and forth between the sofa and bed,

repositioning himself with pillows. (R. 73).

The ALJ noted that because the claimant sought treatment in emergency rooms because

he had no insurance and did not have a primary care physician, the ALJ needed additional

medical evidence to determine the claimant's disability status. The ALJ informed the claimant

that the Social Security Administration would pay for medical examinations— an orthopedic

exam with x-rays of the claimant's lower back and a medical exam including a blood sugar

10

assessment. The ALJ stated that he would have each physician submit a written medical opinion to assist the ALJ in his determination as to what the claimant can do despite his impairments. (R. 76-77). Also, the ALJ pointed out that the record did not include the claimant's back surgery records. The ALJ indicated that as soon as he received the records from the claimant's surgery, he could request the medical exams. (R. 79-80).  The ALJ gave the claimant's representative thirty days to request and submit the surgery and treatment records from the Kirklin Clinic and UAB Hospital. (R. 80). The ALJ made clear to the claimant that he must keep the appointments as well as establish transportation to the appointments, even though the claimant testified his driver's license had been suspended. (R. 71, 80).

The ALJ asked the vocational expert, Ms. Renee Smith, based on her evaluation of the exhibits and listening to the claimant's testimony, to classify the claimant's past work. Ms. Smith testified that the claimant's past work included roofer, classified as medium and skilled, and construction worker, classified as heavy and semi-skilled. (R. 75).

After the claimant's representative submitted the surgery and treatment records, the Social Security Administration on January 28, 2010, authorized a consultative medical examination and fasting blood sugar test appointment that the Social Security Administration scheduled with Dr. Kishin Gehi of the Anniston Medical Clinic for February 8, 2010. (R. 391). Further, in a letter dated January 28, 2010, the Disability Determination Service mailed a reminder notice to the claimant of his scheduled appointment with Dr. Morton Rickless, an orthopedic physician in Anniston, Alabama. (R. 165). Also, in a letter dated February 1, 2010, the Disability Determination Service mailed a reminder notice to the claimant of his scheduled appointment with Dr. Gehi. However, the record indicates the mail carrier returned both notices

to the Disability Determination Service because the envelopes contain the phrase "return to sender; not deliverable as addressed; unable to forward." (R. 165, 167). The record indicates that the claimant did not show for his appointment with Dr. Gehi. (R. 391). Moreover, on the Disability Determination Service's Report of Contact Form dated March 1, 2010, Teresa Fleming, a disability specialist, wrote "case closure form . . . claimant failed to report to the exams and did not respond to the DDS call in letter or voice message." (R. 168).

<em>The ALJ's Decision</em>

On March 8, 2010, the ALJ issued a decision stating the claimant was not disabled under section 1614(a)(3)(A) of the Social Security Act. (R. 49). The ALJ found that the claimant had not engaged in substantial gainful activity since May 5, 2008, the alleged onset date. (R. 43). The ALJ then found that the claimant had the following severe impairments: status post L3 burst fracture and a lumbar fusion at L1-L3; status post fracture of left wrist, healed with no serious residuals; and asthma. (R. 43). The ALJ articulated that based on a single elevated glucose lab test in July of 2009, the record does not support a finding that the claimant has a medically determinable endocrine system impairment. (R. 43).

The ALJ stated the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926). (R. 43). The ALJ also determined that the claimant has the RFC to perform a *range* of light work defined in 20 C.F.R. 416.967(b). The ALJ stated, "[w]hile the claimant is able to sit, stand, walk, lift, carry, push, and pull consistent with light work as defined in the D.O.T., he cannot climb ladders, ropes, or scaffolds. In addition, the claimant should avoid both exposure to unprotected heights and concentrated exposure to

12

dusts, gas, fumes, etc." (R. 44).

In assessing the credibility of the claimant's subjective testimony regarding his limitations, the ALJ first determined that the objective medical evidence did not support the claimant's allegations of disabling pain and limitations. The ALJ found that while the medical evidence does confirm the claimant's testimony regarding his accident and the resulting surgeries, the evidence fails to show that the claimant repeatedly sought care for the alleged back or leg pain. The ALJ stated that when the claimant reported to the emergency room for back pain, he reported a sudden onset of pain of short duration. The ALJ further noted that hospital and outpatient treatment records showed that the claimant's surgeries were successful and that diagnostic imaging established no changes in the placement of his hardware since the lumbar fusion. Yet, in an effort to view the evidence in a manner most favorable to the claimant, the ALJ limited the claimant to no more than light levels of exertion as further restricted in the RFC exam. (R. 44-46).

Because the ALJ found the objective medical evidence did not substantiate the claimant's symptoms the ALJ next evaluated the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. The ALJ found the claimant's credibility undermined because of the lack of restrictions recommended by any treating or examining physician, his work activity after his accident, and his failure to report for the scheduled consultative examinations. The ALJ articulated that, "[t]he record also reflects that the claimant failed to report for the scheduled consultative examination . . . He was also contacted by phone and by mail on two occasions . . . The claimant complained that he is unable to get treatment due to a lack of funds and yet, when he is offered the opportunity for a free

evaluation, he fails to show." (R. 46).

Thus, based on Mr. Barnett's RFC assessment form and vocational rationale form, the ALJ found the claimant to have a RFC to perform a range of light work that included limited sitting, standing, walking, lifting, and carrying; unlimited pushing and pulling; and that he could not climb ladders, ropes, or scaffolds. In addition, the ALJ stated that the claimant should avoid exposure to unprotected heights and concentrated exposure to dusts, gases, and fumes. The ALJ noted that the case record supported these limitations when viewed in its entirety. (R. 47).

Next, the ALJ determined that the claimant could not perform any past relevant work. The ALJ relied on the vocational expert's testimony at the hearing regarding the classification of the claimant's past relevant work as a roofer and a construction worker. The ALJ also noted that the claimant was born on May 25, 1982 and was twenty-five years old on the date the application was filed and, thus, is defined as a younger individual. The ALJ further noted the claimant has a limited education and is able to communicate in English. *Id.*

The ALJ determined that transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (R. 48).

Finally, the ALJ found that when considering the claimant's age, education, work experience, and RFC, significant numbers of jobs exist in the national economy that the claimant can perform. The ALJ stated,

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.18. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light

14

occupational base, the undersigned relied upon the findings of Robert Barnett, the State agency disability examiner and vocational consultant. According to the findings of Mr. Barnett, jobs exist in significant numbers in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity (Exhibit 5E). The vocational expert specifically noted [that] given all of these factors the individual would be able to perform the requirements of representative occupations within the light range of work such as follows: 1) belt picker (D.O.T. #939.687-010, light, unskilled); 2) turner (D.O.T. #789.687-182, light, unskilled); and 3) textile checker (D.O.T. # 221.587-010, light, unskilled).

(R. 48).

The ALJ found the claimant capable of making a successful adjustment to other work that exists in significant numbers in the national economy based on Mr. Barnett's completion of the Vocational Rationale Form on June 10, 2008. Thus, the ALJ determined that the claimant has not been under a disability since the date of his application. (R. 48).

On December 9, 2011, the Appeals Council considered additional evidence submitted by the claimant and made that evidence part of the record, yet denied the claimant's request for review. (R. 8).  On January 19, 2012, the Appeals Council stated that it was setting aside its earlier action and would consider even more information and concluded that the information did not provide a basis for changing the ALJ's decision. (R. 1). The Appeals Council determined that because the ALJ decided the claimant's case on March 8, 2010, the evidence submitted from Gadsden Regional Medical Center from March 15, 2011 through November 26, 2011, and A-Med Ambulance Service dated March 25, 2011 did not affect the ALJ's decision regarding whether the claimant was disabled beginning on or before March 8, 2010. (R. 2).

## VI. Discussion

*The ALJ committed reversible error by relying solely on the vocational consultant's RFC assessment form and vocational rationale form as independent evidence of other work the*

15

*claimant could perform.*

The claimant argues that substantial evidence does not support the ALJ's decision because a vocational expert did not testify at the hearing to support the finding that the claimant had the RFC to perform other jobs in the national economy. Claimant's Reply Br. 1. The Commissioner conceded that, "[t]he ALJ admittedly gave significant weight to the opinion of a non-medical single decision maker, Mr. Robert Barnett, in analyzing Plaintiff's RFC" but argues that doing so was harmless error. Commissioner's Br. 6. This court agrees with the claimant that the ALJ committed reversible error by failing to base his RFC determination on vocational expert testimony using hypothetical questions that comprise all of the claimant's impairments.

If a claimant cannot perform a *full range* of work at a given residual functional level or has nonexertional impairments that limit basic work skills, exclusive reliance on the Medical-Vocational Grids to support a finding of nondisability is inappropriate. *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004) (emphasis added). A *full range* of work means that the claimant is able to do *unlimited* types of work at the given exertional level. *Id*. at 1241 (emphasis added). The preferred method of demonstrating that the claimant can perform other jobs is through the testimony of a vocational expert. *Id*. at 1242. *See also Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002); *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999); *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992); *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). Further, if nonexertional impairments exist, the ALJ may use Medical-Vocational Grids as a framework to evaluate vocational factors, but *must* also introduce independent evidence, preferably through a vocational expert's testimony, of existence of jobs in the national economy that the claimant can perform. *Wolfe v. Chater*, 86 F.3d 1072, 1077-78 (11th Cir. 1996)

16

(emphasis added).

In this case the ALJ did not solicit, as independent evidence, the testimony of a vocational expert to determine what jobs exist that the claimant can perform given his RFC. Instead, the ALJ relied on two inconsistent forms dated June 10, 2008, supplied by Mr. Barnett prior to the administrative hearing: (1) a RFC assessment form, and (2) a vocational rationale form. On the RFC assessment form, Mr. Barnett found the claimant to be in the "*limited* light work" range. (R. 239-46). On the vocational rationale form, he found the claimant to be in the "*full* light work" range. (R. 150).

The ALJ's RFC determination found the claimant to be capable of performing a *limited* range of light range. But the vocational rationale form, where Mr. Barnett listed the jobs the claimant could perform, checked the box for the claimant's RFC to be the "light work range" instead of the option immediately below: "limited light work range." The court is unclear whether Mr. Barnett's listing of the jobs the claimant can perform takes into account all of his limitations noted in the RFC. Moreover, Mr. Barnett's assessments did not take into account medical evidence from the records of the claimant's spine surgery and follow up appointments because those records were not submitted by the claimant's representative until January 19, 2010, after Mr. Barnett's reports. (R. 48, 366). As such, the court finds that substantial evidence does not support the ALJ's finding of the jobs the claimant can perform.

Even if the ALJ had used a vocational expert, which he did not do, to constitute substantial evidence, the ALJ must pose a hypothetical question that comprises all of the claimant's impairments. *Vega v. Comm. of Social Security*, 265 F.3d 1214, 1220 (11th Cir. 2001); *see also Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). Further, when the

vocational expert's testimony conflicts with the D.O.T., the vocational expert's testimony "trumps" the D.O.T. *Id*. at 1229-30. Not only did Mr. Barnett not have key medical evidence in the record when he completed his forms, he had no hypothetical questions from the ALJ with all the impairments Mr. Barnett should consider in determining the jobs the claimant could perform. If a vocational expert's testimony must include all of the claimant's impairments, so should a vocational consultant in preparing forms on which the ALJ relied. The ALJ erred by substituting the testimony of a vocational expert for a vocational consultant's advertent or inadvertent misleading results that do not take into account the entire record. This court finds that the ALJ erred by relying on Mr. Barnett's June 6, 2008 assessments rather than vocational expert testimony or a report that considered all limitations for determining the jobs the claimant is capable of performing.

*Other Concerns*

This court acknowledges that the claimant did not show for his appointment after the Disability Determination Service arranged a consultative examination that included a physical exam and a fasting blood sugar test with a family practice physician. Although the appointment was approximately a forty-five minute drive from the claimant's declared address, (R. 111, 391), the claimant's failure to show and failure to offer a good reason for doing so undermines the claimant's credibility. The ALJ informed the claimant of the importance and purpose of the examination during the administrative hearing. (R. 80).  However, the court is unsure whether the claimant actually knew about the date and time of his scheduled appointment because the reminder notices, cited by the ALJ to undermine the claimant's credibility, bear the postal service stamp: "return to sender; not deliverable as addressed; unable to forward." (R. 164-67).

18

Given that the claimant may not have had notice of the date and time of his scheduled appointments in Anniston, the court on remand, directs that the ALJ should contact the claimant's representative to ensure he receives proper notice of his scheduled medical examinations that the ALJ stated he needed to make his determination. The court also strongly advises the claimant to utilize the opportunity to obtain evaluations from medical professionals of his impairments and how they may or may not currently limit his ability to work.

### VII. Conclusion

For the reasons stated, this court concludes that the decision of the Commissioner is not supported by substantial evidence and is to be REVERSED and REMANDED. The court will enter a separate order in accordance with this Memorandum Opinion.

DONE and ORDERED this 24th day of September, 2013.

_Karon O. Bowdre_
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

.